## Pace Construction Company v. Brandeis Machinery & Supply Company.

(Decided June 16, 1931.)

C. R. HICKS, B. L. SIMPSON and W. T. OTTLEY for appellant.

B. M. JONES for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

By written contract dated July 17, 1928, the Brandeis Machinery & Supply Company sold to the J. F. Pace Construction Company a No. 8 Telesmith mounted rock crusher of certain character and dimensions for the price of $4,669, of which $1,167.25 was paid in cash and three notes for $1,167.25, due in 60, 90, and 120 days, executed for the balance. The contract contained the following warranty:

"Said machinery is purchased upon and subject to the following mutual and interdependent conditions, and none others, namely:

"We guarantee said machinery to be of first-class material and workmanship, and agree to replace, free of charge f. o. b. Factory where made, any part which may within ninety (90) days from date of delivery, prove to have been defective when furnished, the broken or defective part to be returned to the Factory where made for inspection when requested, charges to be prepaid by the customer."

It was also provided in the contract that no general or special agent was authorized to make any changes in the warranties. The Brandeis Machinery & Supply Company also sold the J. F. Pace Construction Company other machinery, for which it executed a note for $500. Upon the maturity of the notes, the purchaser paid the first note of $1,167.25, and renewed the other notes, including the $500 note. The purchaser failed to pay any part of the renewal notes on their maturity, and the seller brought this suit to recover on the notes. The purchaser filed an answer and counterclaim alleging a breach of warranty. Plaintiff filed a demurrer, and without waiving the demurrer, filed a reply setting out the written contract. The defendant then filed an amended answer and counterclaim, and a second amended answer and counterclaim, to all of which a

demurrer was sustained, and, defendant having declined to plead further, judgment was rendered in favor of plaintiff for the amount of the notes, interest, and costs. From that judgment this appeal is prosecuted.

The basis of the counterclaim is that, at the time defendant purchased the crusher, plaintiff falsely and fraudulently guaranteed to them that said crusher would be of first class material, and of first class workmanship, and would crush approximately 200 tons of stone per day; that, relying upon said representation and warranty, and believing the same to be true, they were induced to, and did, buy said crusher from plaintiff, paying it the sum of $1,167.25, and agreeing to pay the remainder in three installments of $1,167.25 in 60, 90, and 120 days; that, when they received said crusher and put it in operation, they found that it was so defective in material and workmanship and the way that it was put together that it was worthless; that, instead of crushing 200 tons of stone per day, it would only crush from 100 to 130 tons of stone per day; that they immediately and within less than 20 days after receiving said crusher notified plaintiff that the crusher was not according to contract, and would not do the work that plaintiff represented it would do; that plaintiff by its president and chief officer agreed and promised to have said crusher put in condition, and make it do the work as represented by plaintiff to defendants; that as each of the deferred payments became due they refused to pay same, unless plaintiff would make the crusher what they represented and guaranteed it to be; that, when the last deferred payment became due, plaintiff by its president, to induce defendants to renew the notes for the deferred payments, falsely and fraudulently represented to defendants that it was taking the matter up with the company that manufactured the crusher, and would have the company replace the crusher with a new one, and agreed that it would carry out its guarantee and make the crusher what it represented it to be both in material and workmanship, and make it crush approximately 200 tons of stone per day, and that they, relying upon plaintiff's representation and guarantee, were induced to sign the notes sued on in this action; that plaintiff failed and refused to make said crusher so that it would crush approximately 200 tons of stone per day, or any other number of tons of stone greater than 100 to 130; that at

the time they purchased said crusher from plaintiff they were under a contract with the Kentucky State Highway Commission for the surface part of the State Highway between Burkesville, Ky., and Glasgow, Ky., and had been given 120 days in which to complete said work; that plaintiff knew at the time he sold the crusher that they were buying the crusher for that specific job; that, if the crusher had been as plaintiff represented and guaranteed it to be, they would and could have crushed stone enough to surface that part of said road by the 1st day of January, 1929; that, due to the defects in the crusher, it took them until the 13th day of April, 1929, to do the work, thus causing them to bear an expense of $4,255.96, in excess of what the expense would have been if the crusher had been as represented and guaranteed by plaintiff.

There is no denial of the execution of the written contract. It stipulates that the machinery was purchased on the conditions therein contained and none other. The only warranty was that the machinery was to be of first class material and workmanship, coupled with the agreement to replace free of charge any part which might within 90 days from date of delivery prove to have been defective when furnished, broken or defective part to be returned to the factory where made for inspection, charges to be prepaid by the customer. It is not pleaded that defendant notified plaintiff that any particular part of the machinery was defective when furnished, but only that it notified plaintiff that the crusher was not according to contract, and would not do the work that plaintiff represented it would do. Indeed, a careful analysis of the answer and counterclaim as repeatedly amended shows that the defense was predicated entirely on the breach of the oral warranty that the crusher would crush approximately 200 tons of stone a day. It is not pleaded that this representation or warranty was omitted from the written contract by fraud or mistake. The case is simply one where, in the face of a contract containing a specific warranty and excluding all others, defendant is relying on an oral warranty made prior to, or contemporaneously with, the execution of the contract. As this cannot be done, it is at once apparent that the answer and counterclaim as amended was not sufficient. John S. Noel Co. v. Theobald, 217 Ky. 28, 288 S. W. 1031.

But the point is made that the facts pleaded are sufficient to bring the case within section 2651b-15, Kentucky Statutes, which is part of the Uniform Sales Act, and reads as follows:

"Where the buyer expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

If it had been alleged that the crusher would not crush stone suitable for road purposes, or that it was worthless, and would not crush stone at all, a different question would be presented. While it is alleged that the machine was worthless, this allegation is immediately followed by the words, "that instead of crushing 200 tons of stone per day, it would only crush from 100 to 130 tons of stone per day," thus negativing the allegation of worthlessness. Manifestly the purpose was to allege a breach of the oral warranty that the machine would crush approximately 200 tons a day. It was not intended to allege a breach of implied warranty, and the allegation is not sufficient to show that the crusher was not reasonably fit for the purpose of crushing rock. In the circumstances, the case does not fall within the statute or the common-law rule to the same effect International Harvester Co. of America v. Bean, 159 Ky. 842, 169 S. W. 549.

It follows that the demurrer to the amended answer and counterclaim was properly sustained.

Judgment affirmed.